UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GOLDEN ALASKA SEAFOODS LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>DEVIN ANTHONY CARELLO,<br><br>      Defendant. | CASE NO. C23-1778JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Plaintiff Golden Alaska Seafoods, LLC's ("GAS") motion for summary judgment.  (Mot. (Dkt. # 10); Reply (Dkt. # 18).)  Defendant Devin Anthony Carello opposes the motion.  (Resp. (Dkt. # 17).)  The court has considered the parties'

//

//

//

ORDER - 1

submissions, the relevant portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS in part and DENIES in part GAS's motion.

## II.   BACKGROUND

Mr. Carello submitted his original application for employment with GAS on May 9, 2022.  (Carello Decl. (Dkt. # 17-1) ¶ 1.)  Later that day, he was contacted by GAS Human Resources Manager Joe Shaul.  (*Id.* ¶ 2.)  Mr. Shaul interviewed Mr. Carello on May 17, 2022.  (*Id.*)  Sometime thereafter, Mr. Shaul informed Mr. Carello that positions would be available onboard the M/V GOLDEN ALASKA in the next season.  (*Id.* ¶ 3.)

On September 26, 2022, Mr. Carello submitted a second application for employment with GAS.  (*Id.* ¶ 9.)  On October 4, 2022, Mr. Shaul asked Mr. Carello to complete an electronic Medical Release & Health Questionnaire ("Health Questionnaire").  (*Id.* ¶ 10; *see also* Shaul Decl. (Dkt. # 13) ¶ 5, Ex. 2 at 12.)  Mr. Carello traveled to Tokyo, Japan, between October 12 and October 31, 2022.  (Carello Decl. ¶¶ 11-12.)  He submitted the Health Questionnaire on November 3, 2022.  (*Id.* ¶ 13.)

The Health Questionnaire begins with a disclaimer stating:

> The answers to the following questions will be reviewed by a Discovery Health MD, LLC, or Discovery Health MD, PLLC [together, "Discovery Health"] physician.  Completing this questionnaire is required and will assist in making recommendations to your employer for work placement that is medically appropriate for you.  It is important that you provide honest and complete answers to each of the questions.  A fitness-for-duty and worksite-placement recommendation will be provided to the employer.

---

[1] Neither party requested oral argument, and the court concludes that oral argument would not assist it in resolving the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4),

> The following questions will assist the company in determining whether you can safely perform the job for which you have been given a conditional offer, with or without restrictions.

(Jarris Decl. (Dkt. # 11) ¶ 6, Ex. 2 ("Health Questionnaire") at 1.)  Mr. Carello affirmed that he understood and agreed to this disclaimer.  (*Id.*)  He also certified that he understood and agreed that (1) he would be "declared not fit for duty if a review of [his] records indicate[s] that h[e has] not been truthful regarding disclosure of previous medical conditions[,]" (2) "all the answers and written explanations given on the Health Questionnaire will be true, complete, and correct to the best of [his] knowledge[,]" and (3) the Health Questionnaire was "for the purpose of obtaining information for the sole purpose of making a determination of fitness for duty based on the information provided."  (*Id.* at 2.)  Mr. Carello completed the Health Questionnaire, in relevant part, as follows:

> **Within the last 6 years, have you ever had to leave work or the vessel for medical reasons?**
>
> Yes.
>
> **Please describe the injury or illness that caused you to have to leave work or the vessel for medical reasons.**
>
> Was leaving the FV Northern Leader several months ago for a family emergency, a few days before leaving while in rough weather I hit head in galley.  I was sent to clinic while flying home in Anchorage where doctor diagnosed with concussion related.  I was placed on medical for a couple weeks. He did release me after phoned follow up weeks later.  No further issues since that time.
>
> …
>
> **Have you ever filed a Worker's Compensation, Labor and Industries, or Maritime Claim for Illness or Injury?**
>
> Yes

ORDER - 3

>**Please describe the condition for which you filed a claim**
>
>Concussion[2]
>
>…
>
>**Have you been found not fit for duty in the past 5 years?**
>
>No
>
>…
>
>**Have you ever had an illness or injury that required you to miss school or work for more than 7 days?**
>
>No.
>
>**Have you had medical care in an Emergency Department in the past 12 months?**
>
>No.
>
>…
>
>**Bone and Joint Questions**
>
>**Please mark all of the bone and joint problems that you have or have had previously**:
>
>I certify that I do not have any of these bone or joint problems[3]
>
>…
>
>**Do you have any other medical history, problems, or symptoms that were not mentioned above?**
>
>No
>
>**You have just completed a health screening questionnaire. Were you able to read and understand all the questions?**
>
>Yes
>
>**Type your full name below to indicate that all your answers above are truthful and accurate**
>
>Devin Anthony Carello

(*Id.* at 7-8, 11-12.)

---

[2] Mr. Carello suffered the concussion in April 2022. (*See* Jarris Decl. ¶ 8.)

[3] The options included "back pain or injury," "general joint problems," and "any other bone or joint problems not listed." (*See* Jarris Decl. ¶ 6, Ex. 2a at 1.)

ORDER - 4

1    GAS contracted with Discovery Health to review job applicants' Health
2 Questionnaires and make recommendations regarding the applicants' physical limitations
3 and need for accommodation.  (Jarris Decl. ¶¶ 3-4; *see also* Shaul Decl. ¶ 6 (stating that
4 he relied on Discovery Health's recommendations regarding applicants' fitness for
5 work).)  During this review, Discovery Health followed up with the applicant about any
6 medical conditions disclosed on the questionnaire.  (Jarris Decl. ¶ 5.)  If a medical
7 condition could potentially affect the applicant's ability to handle job duties onboard the
8 vessel, Discovery Health would obtain and review the applicant's medical records to
9 ensure that the applicant had received proper treatment and was released to full duty.
10 (*Id.*)  Accordingly, after reviewing Mr. Carello's Health Questionnaire, Discovery Health
11 contacted him to obtain more information, including medical records, regarding the
12 disclosed concussion.  (*Id.* ¶ 7.)  After completing its review, Discovery Health "did not
13 see anything that would preclude [Mr. Carello] from working on the vessel as a cook or
14 require any accommodation."  (*Id.* ¶ 10.)  Accordingly, Discovery Health found that Mr.
15 Carello was fit for duty.  (*Id.* ¶ 11; *see also id.* ¶¶ 12-13 (discussing notifications to Mr.
16 Shaul regarding Mr. Carello's fitness for duty).)  According to Dr. Ann G. Jarris, a
17 founder of Discovery Health, if Mr. Carello had

> disclosed on the [Health Questionnaire] that he had prior back problems, [Discovery Health] would have investigated his back-related condition further, including attempting to obtain medical records and imaging and, if necessary, having him undergo a functional capacity evaluation and/or specialty evaluation to determine his ability to handle the job on the GOLDEN ALASKA.

(*Id.* ¶ 14.)

ORDER - 5

1    Mr. Shaul decided to hire Mr. Carello based on Discovery Health's finding that he
2    was fit for duty.  (Shaul Decl. ¶ 13.)  On February 23, 2023, Mr. Carello signed a contract
3    to work as a prep cook on the GOLDEN ALASKA.  (*Id.* ¶ 14, Ex. 6.)
4    　　　On March 4, 2023, Mr. Carello reported an injury to his "center back" when the
5    "boat rolled and fell back, foot slipped off step to cooler trying to catch myself & slide
6    forward/to right side."  (*Id.* ¶ 15, Ex. 7 (March 2023 injury report).)  Then, on March 5,
7    2023, Mr. Carello "bent over to lift bus tub of fruit off cooler floor & felt hard stabbing
8    pain in back & spasm feeling up/down spinal area, lost breath of a split second & yelled
9    w/pain."  (*Id.*)  In consultation with Alaska Maritime Physicians, Mr. Shaul determined
10   that Mr. Carello should not return to work until he was medically evaluated and returned
11   to duty.  (*Id.* ¶¶ 17-18.)  Mr. Carello was first evaluated at the Iliuliuk Family and Health
12   Services Clinic in Dutch Harbor, Alaska on March 6, 2023.  (*Id.* ¶ 19.)  Based on that
13   evaluation, Mr. Shaul arranged for Mr. Carello to travel to Anchorage, Alaska for further
14   evaluation and treatment.  (*Id.*)  By late December 2024, GAS had paid $26,493.52 in
15   medical expenses and $21,875.00 in maintenance payments to Mr. Carello.  (*Id.* ¶ 22.)
16   　　　GAS has since learned that Mr. Carello had a history of back problems before he
17   applied for work on the GOLDEN ALASKA.  In September 2016, for example, Mr.
18   Carello received X-Rays of his spine.  (Spivak Decl. (Dkt. # 14) ¶ 10, Ex. 8.)  On January
19   18, 2017, Mr. Carello was seen in the Marquette General Health System Emergency
20   Department in Michigan for back pain.  (*Id.* ¶ 6, Ex. 4.)  He returned to the Emergency
21   Department two days later, again complaining of back pain.  (*Id.* ¶ 7, Ex. 5.)
22

1          Then, on August 8, 2022, Mr. Carello woke up with "stiffness and pain in [his]
2   mid-[back]" while he was working onboard a different vessel.  (Carello Decl. ¶ 4.)
3   Although he continued to work, his captain noticed he was in pain and sent him to the
4   Iliuliuk Clinic in Dutch Harbor.  (*Id.* ¶¶ 4-5; *see also* Milum Decl. (Dkt. # 12) ¶ 4, Ex 1
5   (August 13, 2022 injury report).)  On August 19, 2022, a practitioner at the Illiuliuk
6   Clinic told Mr. Carello he had a compression fracture, and the company arranged for him
7   to return to Michigan.  (Carello Decl. ¶ 5.)  On August 22, 2022, Mr. Carello was seen at
8   the UP Health System Marquette Emergency Department for "tenderness mid T[horacic]
9   spine region and upper L[umbar] spine region" and received a CT scan.  (*Id.* ¶ 6; Spivak
10  Decl. ¶ 9, Ex. 7.)  On September 1, 2022, Mr. Carello was told that his injury was a "soft
11  tissue flare-up," and on September 6, 2022, a physician at UP Health System-Bell told
12  Mr. Carello he was fit for duty with no restrictions  (Carello Decl. ¶¶ 7-8.)  Mr. Carello
13  received maintenance and cure benefits between August 20, 2022, and September 6,
14  2022.  (Milum Decl. ¶ 5.)
15         GAS filed this action on November 20, 2023.  (Compl. (Dkt. # 1).)  In its
16  complaint, GAS sought declaratory judgments that (1) "it has no obligation to pay Mr.
17  Carello's benefits of maintenance and cure" and (2) "any future award of damages or any
18  future award of maintenance and cure may be offset by the amount of [GAS]'s
19  overpayment of benefits to date."  (*Id.* ¶¶ 4.1-5.2; *see also id.* at 3-4 (prayer for relief).)
20  GAS moved for summary judgment on December 27, 2024.  (Mot.)  It now seeks (1) a
21  declaratory judgment it has no obligation to pay Mr. Carello's maintenance and cure, and
22  (2) an award of restitution to recover the maintenance and cure payments it already made.

(*See generally id.*)  Mr. Carello filed a response, and GAS filed a reply.  (Resp.; Reply.)  The motion is now ripe for decision.

### III.    ANALYSIS

Below, the court sets forth the summary judgment standard and then evaluates GAS's motion.

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).  If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party[.]" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (citation omitted).

**B.     Intentional Concealment**

GAS asserts that it is entitled, as a matter of law, to a declaratory judgment that it is under no obligation to pay maintenance and cure benefits to Mr. Carello because he intentionally concealed his pre-existing back problems when he applied for employment onboard the GOLDEN ALASKA. The court agrees.

A seaman is not entitled to maintenance and cure if "(1) he intentionally withholds from his employer information about a preexisting medical condition; (2) there is a causal relationship between the undisclosed condition and the impairment for which he seeks compensation; and (3) the undisclosed condition was material to the employer's decision to hire him." *Coastal Villages Pollock, LLC v. Naufahu* ("*Coastal Villages I*"), No. C13-1234JCC, 2014 WL 1053126, at *6 (W.D. Wash. Mar. 19, 2014), *aff'd*, 669 F. App'x 468 (9th Cir. 2016) (citing *Vitcovich v. Ocean Rover O.N.*, No. 94-3507, 106 F.3d 411, 1997 WL 21205 (9th Cir. Jan 14. 1997) (unpublished[4])).

---

[4] *Vitcovich* was issued before the Ninth Circuit changed its rules to allow citation of unpublished opinions. *See* 9th Cir. R. App. P. 36-3 (providing that unpublished dispositions issued before January 1, 2007 "may not be cited to the courts of this circuit," except in

The court has little trouble concluding that GAS has established the second and third elements of the intentional concealment defense as a matter of law.[5] The causality element is met because Mr. Carello's undisclosed 2017 and 2022 back problems involved the same part of the body that he injured in 2023 and for which he sought maintenance and cure. (*See* Mot. at 24-26); *Coastal Villages I*, 2014 WL 1053126, at *6 (holding that causality was satisfied because the seaman's "current symptoms and diagnoses are identical to those he concealed from" the employer). And the materiality element is satisfied because Mr. Carello's answers to the questions on the Health Questionnaire were material to GAS's decision to hire him. (*See* Mot. at 27-28; Shaul Decl. ¶ 21 (stating that Mr. Shaul relied on Discovery Health's evaluation of the health issues disclosed on the Health Questionnaire and fitness-for-duty recommendations in making hiring decisions)); *Coastal Villages Pollock, LLC v. Naufahu* ("*Coastal Villages II*"), 669 F. App'x 468, 469 (9th Cir. 2016) (concluding employer demonstrated materiality where its pre-employment questionnaire "asked about specific health conditions relevant to the work that [the seaman] would perform" and the employer "would have conducted further inquiry and may not have hired [the seaman] had the seaman disclosed his [medical] conditions").

---

circumstances not applicable here). As the court discusses below, however, courts both within and outside this circuit have cited *Vitcovich* as an authority in cases involving the intentional concealment defense.

[5] Mr. Carello does not address the second and third elements in his response. (*See generally* Resp.)

Mr. Carello disputes only the first element: whether GAS has established that his failure to disclose his pre-existing back problems was intentional. (Resp. at 6-10.) The parties disagree about the test that applies when assessing whether a seaman intentionally withheld information. Mr. Carello argues that the employer must prove that the seaman subjectively believed that the employer would consider the undisclosed medical condition important to prevail on the first element. (*Id.* at 7 (citing *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 990 (9th Cir. 1987).) GAS, meanwhile, argues that an objective test should apply, under which proof that the seaman failed to disclose pre-existing conditions on the employer's health screening questionnaire is enough to demonstrate intentional concealment. (Mot. at 20 (compiling cases).)

The court agrees with GAS that the objective test applies in this case. The Ninth Circuit has held, albeit in an unpublished opinion:

> The "intentional concealment" element does not require a finding of subjective intent. . . . Rather, it refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

*Vitcovich*, 1997 WL 21205, at *3 (citing *Berkett v. Weyerhaeuser S.S. Co.*, 350 F.2d 826, 830 n. 4 (9th Cir. 1965), and compiling cases from other circuits so holding). Courts both within and outside the Ninth Circuit have since adopted this test for evaluating intentional concealment. *See, e.g.*, *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005) ("We agree with the Court of Appeals for the Ninth Circuit that '[t]he "intentional concealment" element does not require a finding of subjective intent.'"

1  (quoting *Vitcovich*)); *Martinez v. Crosby Dredging, LLC*, 686 F. Supp. 3d 479, 485 (E.D.
2  La. 2023) ("Plaintiff intentionally concealed or misrepresented medical facts when he
3  stated in his medical history questionnaire that he had never experienced any back pain or
4  injuries[.]" (citing *Vitcovich*)); *Rose v. Miss Pac., LLC*, No. 3:09-CV-00306-ST, 2012
5  WL 75028, at *4 (D. Or. Jan. 10, 2012) (noting that "intentional concealment" "does not
6  require a finding of subjective intent" (quoting *Vitcovich*)); *Welsh v. Maersk Line, Ltd.*,
7  No. 06-2047 (RBK), 2008 WL 4449578, at *3 (D.N.J. Sept. 29, 2008) (adopting the
8  "majority position" and applying the test set forth in *Vitcovich*).

9       Mr. Carello meanwhile, relies on a single sentence in *Omar v. Sea–Land Services,*
10 *Inc.*: "Fraud may bar maintenance and cure where a seaman conceals a medical
11 condition that he knows or should know is related to the illness or injury for which
12 maintenance and cure are requested." 813 F.2d at 990.  He asserts that this statement
13 means that "there is no intentional concealment if the seaman had a subjective belief that
14 his medical history was irrelevant to the question of whether [he] can perform the job he
15 was applying for." (Resp. at 7.)  In *Omar*, however, the issue was whether a seaman's
16 "use of fraudulent papers in obtaining employment bar[red] him from receiving maritime
17 remedies related to that employment." *Omar*, 813 F.3d at 987.  The Ninth Circuit
18 concluded that the seaman's fraud in obtaining an Able-Bodied Seaman's endorsement
19 did not bar him from receiving maintenance and cure because the fraud was unrelated to
20 his injury.  *Id.*  The *Omar* court did not consider whether a seaman's failure to disclose
21 pre-existing health conditions on a health questionnaire could amount to intentional
22

concealment.  As a result, the court finds the cases cited above that considered this question more persuasive than *Omar*, and, like those courts, adopts the objective test.[6]

Here, is undisputed that Mr. Carello did not disclose, in response to direct questions asked in GAS's pre-employment Health Questionnaire, that he had visited the emergency room for back pain in August 2022 and that he was off work and receiving maintenance and cure as a result of his back problems between August 20 and September 6, 2022.  (*See generally* Health Questionnaire.)  Under the objective test, Mr. Carello's failure to disclose this information constitutes intentional concealment.

The court concludes that GAS has met its burden to demonstrate, as a matter of law, that the intentional concealment defense bars Mr. Carello from receiving maintenance and cure.  Therefore, the court grants GAS's motion for summary judgment on its claim for a declaratory judgment that it is under no obligation to pay maintenance and cure benefits to Mr. Carello.

**C.    Restitution**

GAS also asks the court to award it an "affirmative recovery" against Mr. Carello for reimbursement of the maintenance and cure payments it has already made.  (Mot. at 29; *see also* Prop. Order (Dkt. # 10-1) at 2-3.)  Mr. Carello counters that until now, GAS

---

[6] Mr. Carello also argues that by citing *Sammon v. Cent. Gulf S. S. Corp.*, 442 F.2d 1028, 1029 (2d Cir. 1971), the *Omar* court "implicitly rejected" the objective standard. (Resp. at 7.) *Sammon*, however, did not involve the seaman's failure to disclose pre-existing conditions in response to specific questions on a health questionnaire; rather, when the seaman was asked about "any earlier accident, injury or illness" during a physical examination, he did not disclose that he had once received medical attention for warts on his foot. *Sammon*, 442 F.2d at 1028. Again, the court finds cases involving pre-employment health questionnaires more persuasive under the facts presented in this action.

has "represented that it is seeking only declaratory relief, . . . not a money judgment" and urges the court to "decline to order affirmative relief GAS did not plead." (Resp. at 10.)

The court denies GAS's late-asserted request for reimbursement of maintenance and cure payments. In its complaint, GAS seeks only a declaration that "any *future* award of damages or any *future* award of maintenance and cure may be offset by the amount of [GAS]'s overpayment of benefits to date." (Compl. ¶ 5.2 (emphasis added).) It has not pleaded a claim for recovery of amounts already paid (*see generally id.*), and it is too late to do so now because the deadline to amend pleadings expired on October 2, 2024, and the March 31, 2025 trial date is swiftly approaching (*see* Sched. Order (Dkt. # 9)). Furthermore, even if the cases GAS cites suggest that a vessel owner may be able to bring a counterclaim for restitution, they do not support the proposition that a declaratory judgment claim for offset can be transformed into an affirmative claim for restitution at summary judgment. (*See* Mot. at 29 (first citing *Vitcovich*, 1997 WL 21205, at *4 (awarding summary judgment to vessel owner on its counterclaim for reimbursement of maintenance and cure); and then citing *Mohamed v. F/V N. Victor*, No. C05-2019JLR, 2007 WL 27120, at *4-5 (W.D. Wash. Jan. 3, 2007) (holding that defendants were not entitled to restitution of maintenance and cure payments already made where they did not prove that the seaman intentionally concealed a prior injury); *see also* Reply at 9-10 (citing other cases involving counterclaims to recover overpayments of maintenance and cure).) Therefore, the court denies GAS's motion for summary judgment on its unpleaded claim for restitution.

1    GAS did not, however, move for summary judgment on its pleaded claim for a
2 declaratory judgment that it may offset the maintenance and cure payments it has already
3 made against any future damages award Mr. Carello might receive.  (*See generally* Mot.)
4 Because it has already concluded that Mr. Carello was not entitled to maintenance and
5 cure due to his intentional concealment of his pre-existing back problems, the court
6 orders the parties to show cause why summary judgment should not also be granted in
7 GAS's favor on its declaratory judgment claim regarding offset.  *See* Fed. R. Civ. P.
8 56(f)(3) ("[A]fter giving notice and a reasonable time to respond, the court may: . . .
9 consider summary judgment on its own after identifying for the parties material facts that
10 may not be genuinely in dispute.").

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part GAS's motion for summary judgment (Dkt. # 10).  The parties are ORDERED to show cause, by no later than **February 19, 2025**, why the court should not grant summary judgment in GAS's favor on its claim for a declaratory judgment that "any future award of damages or any future award of maintenance and cure may be offset by the amount of [GAS's] overpayment of benefits to date."  (Compl. ¶ 5.2.)  Failure to respond will result in the

//
//
//
//
//

court (1) entering judgment in GAS's favor on both of its declaratory judgment claims and (2) vacating the March 31, 2025 trial date and all remaining pretrial deadlines.

Dated this 12th day of February, 2025.

JAMES L. ROBART
United States District Judge

ORDER - 16